IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-03164-PAB-SBP

ANDREW BOJORQUEZ, et al.,

      Plaintiffs,

v.

AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA
d/b/a ASSURANT, INC.,[1]

      Defendant.

_____

**ORDER**

_____

      The matters before the Court are Defendant American Bankers Insurance

Company of Florida's Motion to Compel Arbitration and to Stay Proceedings [Docket

No. 13] and Plaintiffs' Opposed Motion for Jury Trial [Docket No. 19]. The Court has

jurisdiction pursuant to 28 U.S.C. § 1332.

---

[1] Defendant American Bankers Insurance Company of Florida ("ABIC") asserts that "ABIC was improperly named 'American Bankers Insurance Company of Florida d/b/a Assurant, Inc.' in the case caption." Docket No. 13 at 2 n.1. ABIC states Assurant, Inc. is the indirect parent holding company for ABIC. *Id.* It claims that Assurant, Inc. is not an insurance company and did not issue plaintiffs' policies. *Id.* A declaration by Najla Archer, the Business Unit Compliance Liaison Director for ABIC, states that "'Assurant' is a trade name used by a number of related companies, including ABIC." Docket No. 27-1 at 1 n.2. Plaintiffs state that "'Assurant' conspicuously appears on some of the correspondence sent to Plaintiffs regarding the policies at issue. Until and unless this matter is clarified through litigation, Plaintiffs will continue to refer to Defendant as previously named." Docket No. 18 at 2 n.1 (internal citation omitted). Plaintiffs, however, do not name Assurant, Inc. as a separate defendant and have not served Assurant, Inc. as an entity separate from ABIC. *See* Docket No. 5.

## I.  BACKGROUND

### A.  Facts[2]

Plaintiffs were individual residents of the Parkside Collective Apartment complex, located in Aurora, Colorado.  Docket No. 4 at 7, 8, ¶¶ 47, 55.  On September 10, 2022, the Parkside Collective Apartment complex was damaged by an explosion.  *Id.*  At the time of the explosion, plaintiffs had renter's insurance through American Bankers Insurance Company of Florida ("ABIC").[3]  *Id.* at 10–20, ¶¶ 72–159.  Each of plaintiffs' policies includes an arbitration provision.  Docket No. 13 at 3.[4]

---

[2] The facts presented here are undisputed unless otherwise indicated.

[3] The parties provide limited information on how plaintiffs obtained coverage from ABIC.  The complaint alleges that plaintiffs "were insured by a renter's policy" with ABIC.  *See*, *e.g.*, Docket No. 4 at 10, ¶ 72.  ABIC's motion to compel arbitration also states that plaintiffs "were insured under the Policies" by ABIC.  Docket No. 13 at 3. Plaintiffs' motion for jury trial states that plaintiffs "held renters' insurance policies issued by Defendant."  Docket No. 19 at 2.  In her declaration, Ms. Archer states that she has "knowledge of the renter's insurance policies purchased by the Plaintiffs in this case" and that each plaintiff "procured a renter's insurance policy from ABIC."  *See* Docket No. 27-1 at 4, ¶¶ 13–14.  Finally, as part of their response to ABIC's motion to compel arbitration, plaintiffs submitted declarations that state that the Parkside Collective Apartment complex required them "to obtain renters insurance."  *See*, *e.g.*, Docket No. 18-2 at 1, ¶ 5.  It is therefore undisputed that plaintiffs purchased renter's insurance policies from ABIC and were covered by these policies on the date of the explosion.

[4] Plaintiffs do not contest that the policies they purchased contain an arbitration provision.  *See* Docket No. 18 at 2–7.  Instead, plaintiffs assert that ABIC has failed to show that plaintiffs were aware that the policy contained an arbitration provision at the time of purchase.  *Id.* at 6.  As part of its reply, ABIC attached certified copies of each plaintiff's policy.  Docket Nos. 27-2, 27-3.  Each of these policies contains an arbitration provision.  Docket Nos. 27-2, 27-3.  The Court gave plaintiffs permission to file a sur-reply to respond to new factual allegations in ABIC's reply.  Docket No. 30.  In plaintiffs' sur-reply, they do not contest the authenticity of the policies submitted by ABIC, only whether plaintiffs had notice of the arbitration clause before purchasing their policies. *See generally* Docket No. 31.  Therefore, the Court finds that it is undisputed that the policies plaintiffs purchased include an arbitration provision.

**B.  Arbitration Provision**

Plaintiffs' renter's insurance policies include the following arbitration provision[5]:

### ARBITRATION PROVISION

**READ THE FOLLOWING ARBITRATION PROVISION ("PROVISION") CAREFULLY.  IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO A JURY TRIAL AND TO OBTAIN REDRESS THROUGH COURTS.**

As used in this Arbitration Provision, "You" and "Your" mean the policyholder or policyholders, insureds, or additional insureds, and all of his/her heirs, survivors, assigns and representatives.  "We" and "Us" mean American Bankers Insurance Company of Florida.

Any and all claims, disputes, or controversies of any nature whatsoever (whether in contract, tort or otherwise), including statutory, common law, fraud (whether by misrepresentation or by omission) or other intentional tort, property, or equitable claims) arising out of, relating to, or in connection with (1) this Policy or Certificate or any prior Policy or Certificate issued by Us to You, (2) Any credit, loan or purchase transaction in connection with which this Policy or Certificate or any prior Policy or Certificate was issued by Us to You, or (3) the validity, scope, interpretation, or enforceability of this Provision or of the entire Policy or Certificate ("Claim"), shall be resolved by binding arbitration before a single arbitrator.  Unless You and We mutually agree on an alternative, the arbitration will take place in the county and state where You live.  All arbitrations shall be administered by the American Arbitration Association ("AAA") in accordance with its Expedited Procedures of the Commercial Arbitration Rules of the AAA in effect at the time the Claim is filed.  The terms of this Provision shall control any inconsistency between the AAA's Rules and this Provision.  You may obtain a copy of the AAA's Rules by calling (800) 778-7879.  Upon written request We will advance to You either all or part of the fees of the AAA and of the arbitrator after You have been unsuccessful in obtaining a waiver of fees and costs from the AAA. The arbitrator will decide whether You or We will be responsible for these fees.  The arbitrator shall apply relevant substantive federal and state law and applicable statutes of limitations and shall provide written, reasoned findings of fact and conclusions of law.  This Arbitration Provision is part of a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.  **If any portion of this**

---

[5] Because arbitration provisions in each of plaintiffs' policies are identical, *see* Docket Nos. 27-2, 27-3, the Court will cite only Docket No. 13-1 when referencing the arbitration provision.

**Arbitration Provision is deemed invalid or unenforceable, it shall not invalidate the remaining portions of the Arbitration Provision, except that in no event shall this Arbitration Provision be amended or construed to permit arbitration on behalf of a group or class.**  For the purpose of this Arbitration Provision, American Bankers Insurance Company of Florida shall be deemed to include all of its affiliates, successors and assigns, including but not limited to American Bankers Insurance Company of Florida, their respective principals, partners, officers and directors and all of the dealers, licensees, agents, and employees of any of the foregoing entities.  This Arbitration Provision shall inure to the benefit of and be binding on You and each of the aforementioned persons and entities.  This Provision shall continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Policy or Certificate.

**No Class Actions/No Joinder of Parties:**  You agree that any arbitration proceeding will only consider Your Claims.  Claims by, or on behalf of, other individuals will not be arbitrated in any proceeding that is considering Your Claims.  You also agree that You will not join with others to bring Claims in the same arbitration proceeding unless all such persons are named on Your Policy or Certificate.

**YOU AND WE UNDERSTAND AND AGREE THAT BECAUSE OF THIS ARBITRATION PROVISION NEITHER YOU NOR WE WILL HAVE THE RIGHT TO GO TO COURT EXCEPT AS PROVIDED ABOVE OR TO HAVE A JURY TRIAL OR TO PARTICIPATE AS ANY MEMBER OF A CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM.**

Docket No. 13-1.

### C.  Procedural History

On September 6, 2023, plaintiffs filed their complaint against ABIC in the District Court for Boulder County, Colorado.  Docket No. 1 at 2, ¶ 1.  ABIC removed the case to federal court on November 30, 2023.  *Id.* at 1.  Plaintiffs bring claims for breach of contract, statutory bad faith, and common law bad faith against ABIC based on their insurance policies.  Docket No. 4 at 24–26, ¶¶ 190–211.  ABIC moved to compel arbitration on December 8, 2023.  Docket No. 13.  Plaintiffs responded, Docket No. 18, and ABIC replied.  Docket No. 27.  With leave of court, plaintiffs filed a sur-reply.

Docket No. 31.  On December 29, 2023, plaintiffs filed a motion "request[ing] a jury trial on the limited issue of the existence of an arbitration agreement."  Docket No. 19 at 4. ABIC responded, Docket No. 28, and plaintiffs replied.  Docket No. 32.

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") "reflect[s] both a liberal . . . policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Sanchez v. Nitro-Lift Techs., LLC*, 762 F.3d 1139, 1145 (10th Cir. 2014) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).  Accordingly, courts "must rigorously enforce arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (citation and quotation omitted), and resolve "any doubts concerning the scope of arbitrable issues" in favor of arbitration.  *Sanchez*, 762 F.3d at 1146 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).  "In addition, this liberal policy covers more than simply the substantive scope of the arbitration clause, and encompasses an expectation that [arbitration] procedures will be binding."  *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999) (citation and quotation omitted).

"[A]lthough the presence of an arbitration clause generally creates a presumption in favor of arbitration, this presumption disappears when the parties dispute the existence of a valid arbitration agreement."  *Bellman v. i3Carbon*, LLC, 563 F. App'x 608, 613 (10th Cir. 2014) (unpublished) (citations omitted).  "[W]hether a party agreed to arbitration is a contract issue, meaning arbitration clauses are only valid if the parties intended to arbitrate."  *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 59 F.4th 1090, 1097 (10th Cir. 2023), *cert. denied sub nom. Argent Tr. Co. v. Harrison*, 144

S. Ct. 280 (2023) (citation omitted).  "No party can be compelled to submit a dispute to arbitration without having previously agreed to so submit."  *Id.* (citation omitted). "Accordingly, the first task of a court asked to compel arbitration of a dispute is [typically] to determine whether the parties agreed to arbitrate that dispute."  *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

Determining whether a dispute is subject to arbitration "is similar to summary judgment practice."[6]  *Bellman*, 563 F. App'x at 612 (quoting *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012)).  The party moving to compel arbitration "bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate." *BOSC, Inc. v. Bd. of Cnty. Commissioners of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017).  If the moving party satisfies this burden, "the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith."  *Id.* (citing *Hancock*, 701 F.3d at 1261).  "The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate has been made by the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise."  *In re HomeAdvisor, Inc. Litig.*, No. 16-cv-01849-PAB-KLM,

---

[6] The standard for review of motions to compel arbitration is "the standard used by district courts in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c).  Application of that standard to the issue presented herein is appropriate inasmuch as the district court's order to arbitrate is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate."  *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980) (internal citation omitted); *see also Hancock*, 701 F.3d at 1261 (citing *Par-Knit Mills, Inc.*, 636 F.2d at 54 n.9).

2019 WL 4463890, at *2 (D. Colo. Sept. 17, 2019) (citation omitted); *Bellman*, 563 F. App'x at 612 ("In ascertaining whether questions of material fact remain, we give the nonmoving party – here, Plaintiffs – the benefit of all reasonable doubts and inferences that may arise." (citation and quotations omitted)).

When "a quick look at the case" reveals that "no material disputes of fact exist," a district court may "decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." *BOSC*, 853 F.3d at 1177 (quoting *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014)). But if "material disputes of fact do exist," the FAA "calls for a summary trial." *Id.* (citing *Howard*, 748 F.3d at 978 (emphasis omitted)).

## III.  ANALYSIS

### A.  Motion to Compel Arbitration

"[W]hether a party agreed to arbitration is a contract issue, meaning arbitration clauses are only valid if the parties intended to arbitrate." *Harrison*, 59 F.4th at 1097. It is undisputed that plaintiffs' renter's insurance policies have an arbitration clause. However, the Court must first consider whether plaintiffs agreed to the arbitration clause.

Under the burden-shifting framework in *BOSC*, ABIC bears the initial burden of presenting evidence sufficient to demonstrate the existence of an arbitration clause and plaintiffs' refusal to arbitrate." *BOSC*, 853 F.3d at 1177. It is undisputed that plaintiffs purchased renter's insurance from ABIC to provide coverage for their apartments in the Parkside Collective Apartment complex. *See* Docket No. 4 at 7, 8, ¶¶ 47, 55. It is also undisputed that these policies contained an arbitration clause. Finally, plaintiffs'

response to the motion to compel arbitration, Docket No. 18, and their motion for jury trial, Docket No. 19, make it clear that plaintiffs refuse to arbitrate.  As such, ABIC has satisfied its initial burden.

Accordingly, to avoid arbitration, plaintiffs must "raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith."  *BOSC*, 853 F.3d at 1177 (citation omitted).  Plaintiffs argue that they never agreed to the arbitration provision.  Docket No. 18 at 2, 6 (citing *French v. Centura Health Corp.*, 509 P.3d 443, 449 (Colo. 2022) ("To be enforceable, a contract requires mutual assent to an exchange between competent parties for legal consideration.")).  Plaintiffs contend that, under Colorado law,[7] "to establish the existence of a contract, the evidence must show the parties agreed upon all essential terms."  *Id.* at 6 (citing *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986)).  They maintain that, while "[t]rue assent may be implied from the circumstances and acts of the parties, . . . it must appear in some form."  *Id.* (quoting *Mumm v. Adam*, 307 P.2d 797, 801 (Colo. 1957)).

Plaintiffs argue that there is a genuine dispute of material fact as to whether they had notice of the arbitration provision when purchasing their renter's insurance.  Docket No. 18 at 3.  Plaintiffs attach declarations that state, "[w]hen purchasing my insurance, I

---

[7] "An arbitration agreement is just a type of contract, and the FAA does not itself provide a substantive law governing the formation or general interpretation of contracts, so ordinary state contract law always fills in crucial gaps in any arbitration agreement." *Rodgers-Rouzier v. Am. Queen Steamboat Operating Co., LLC*, 104 F.4th 978, 991 (7th Cir. 2024) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009)).  Both parties assume Colorado law applies in this case.  *See* Docket No. 18 at 7; Docket No. 27 at 5.  Accordingly, the Court will apply Colorado law.  *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

saw nothing that made me aware of the existence of an arbitration provision."  *See, e.g.*, Docket No. 18-2 at 1, ¶ 8.  Plaintiff Michael Angeles's declaration is representative of the assertions in each of plaintiffs' declarations.  Mr. Angeles's declaration states:

> 5.  When I first completed my lease application online for Parkside, I was required, by Parkside, to obtain renter['s] insurance.
>
> 6.  Parkside's online portal provided a web link that allowed me to purchase insurance from a company named "Assurant."
>
>  . . . .
>
> 8.  When purchasing my insurance, I saw nothing that made me aware of the existence of an arbitration provision, and I did not intend to agree to one when I purchased my insurance.
>
> 9.  After purchasing my insurance, I received a confirmation email from "Assurant" with a "proof of insurance" attached.
>
> 10.  The body of the email did not include notice of any arbitration provision.
>
> 11.  The attached "proof of insurance" was a two-page document that did not include an arbitration provision.
>
> 12.  The main body of the email stated that there was nothing else I needed to do to maintain my insurance coverage with "Assurant," and that I was "automatically enrolled in autopay and autorenewal.

*Id.*, ¶¶ 5–12.  Plaintiffs contend that ABIC has supplied "zero competent evidence to establish that the arbitration provision in question was actually presented to the Plaintiffs, let alone agreed to, at the time the relevant policies were purchased."  *Id.* at 2.

Aside from plaintiffs' declarations that they used a Parkside online portal to access ABIC's website and that plaintiffs saw nothing to make them aware of an arbitration provision, the parties have presented no facts as to how plaintiffs purchased their policies.  For example, the briefing contains no facts as to (1) what information was

presented to plaintiffs on ABIC's website, (2) whether plaintiffs had access to the terms of the policy before purchase, or (3) what plaintiffs did to make the actual purchase.

"[T]he formation of a contract requires mutual assent to the terms of the contract." *Univ. of Denver v. Doe*, 547 P.3d 1129, 1139 (Colo. 2024) (citation omitted). "This means that the parties must have agreed upon all essential terms, and there must be a meeting of the minds." *Naizgi v. HSS, Inc.*, 685 F. Supp. 3d 1015, 1021 (D. Colo. 2023) (citation omitted). If a party is not aware of an essential term, there has been no meeting of minds as to that term. *See Richan v. AGEISS, Inc.*, No. 22-cv-01060-NYW-MEH, 2022 WL 3716524, at *5 (D. Colo. Aug. 29, 2022) (applying Colorado law) (finding that the (1) email which attached other provisions of a multipart agreement, but included only "a blank 'placeholder' page" for the employment agreement containing the arbitration provision and the (2) signing of the other attached documents, was insufficient to show that plaintiff assented to the arbitration provision); *French*, 509 P.3d at 450 ("First, no evidence in the record indicates that French even knew of the chargemaster's existence. The chargemaster was not referenced in any way – even obliquely – in any of the HSAs . . . that French signed. Nor did French have any knowledge of the chargemaster's terms or rates. . . . Second, no evidence in the record shows that French ever assented to the chargemaster's terms, much less clearly and knowingly assented to such terms. She assuredly could not assent to terms about which she had no knowledge and which were never disclosed to her.").

Here, the evidence shows only that plaintiffs accessed ABIC's website and that they obtained renter's insurance by purchasing their policies. The Court has no facts before it as to whether plaintiffs had access to the terms of their policies before

purchasing them, what information was provided to plaintiffs before purchasing their policies, or what they agreed to when purchasing their policies.

ABIC argues that plaintiffs' declarations are insufficient to raise an issue of material fact because plaintiffs are charged with knowledge of the terms of the policies they purchased.  Docket No. 27 at 5.  ABIC maintains that, even if plaintiffs did not have actual knowledge of the arbitration provision, they had constructive knowledge of it and therefore the arbitration clause is enforceable.  *Id.*; *see also Levine v. Vitamin Cottage Nat. Food Markets, Inc.*, No. 20-cv-00261-STV, 2021 WL 4439800, at *6 (D. Colo. Sept. 27, 2021) (citation, quotation, and alterations omitted) ("Courts routinely uphold . . . agreements, provided the signatory had reasonable notice, either actual or constructive, of the terms of the putative agreement.").

While constructive notice began as a concept in property law, "this principle has been applied more frequently in recent years when determining whether a party is bound by contract terms, including arbitration agreements."  *Macasero v. ENT Credit Union*, 533 P.3d 982, 988–89 (Colo. App. 2023) (citing *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019); *Needleman v. Golden 1 Credit Union*, 474 F. Supp. 3d 1097, 1103 (N.D. Cal. 2020); *Page v. Alliant Credit Union*, 2020 WL 2526488, at *2 (N.D. Ill. May 18, 2020)).

In *Macasero*, 533 P.3d at 985, the court considered whether the plaintiff could be bound by an arbitration provision that was added to the membership agreement for a credit union.  In determining whether plaintiff had constructive knowledge of the terms of the agreement, the court considered (1) the parties' prior course of dealing, (2) whether the notice of the arbitration provision was reasonably conspicuous, and (3) how

accessible the agreement's terms and conditions were to users when they were notified that they were subjected to them.  *Id.* at 989–91.  Analyzing the parties' course of dealing, the court noted that the parties had explicitly agreed that important notices regarding the plaintiff's membership could be sent through email, which was the manner in which the notice of the arbitration provision was sent.  *Id.* at 989.  In considering whether the notice of the arbitration provision was reasonably conspicuous, the court noted that courts consider the "design and content of the relevant interface to determine if the contract terms were presented to the offeree in a way that would put them on inquiry notice of such terms."[8]  *Id.* at 990 (citation omitted).  The court found that the notice was reasonably conspicuous because, even though the notice is below a promotion, "it is in the same font, size, and color, including a blue, underlined hyperlink to click for more information, as the bank statement notice near the top of the page."  *Id.*  Finally, the court found that the terms and conditions were accessible to the plaintiff because "[u]sing the hyperlink in [defendant's] update notice takes the reader to a webpage clearly titled 'Important Disclosures' with a subheading titled 'Important Account Information.'"  *Id.* at 991.   The court found that, "[i]n the first section, titled 'Important Account Information for Our Members,' the text clearly states that a reader can see recent changes to the membership agreement by following a bold, blue, underlined hyperlink.  Clicking this hyperlink brings up a page summarizing the updates

---

[8] Under Colorado law, "[c]onstructive notice occurs when a party 'abstains from inquiry when inquiry ought to be made' because '[w]illful ignorance is equivalent, in law, to actual knowledge."  *Id.* at 989 (quoting *Mackey v. Fullerton*, 7 Colo. 556, 560 (1884)).  "Inquiry notice requires sufficient facts to attract the attention of interested persons and prompt a reasonable person to inquire further.  The receipt of inquiry notice charges a party with notice of all the facts that a reasonably diligent inquiry would have disclosed." *Id.* (citing *City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1, 25 (Colo. 1996)).

to the agreement." *Id.* The court found that this notice was distinguishable from cases "where the terms and conditions were not provided to the user *at all* when the user was required to agree." *Id.* (distinguishing *In re HomeAdvisor*, 2019 WL 4463890, at *6).

In *Calderon v. Sixt Rent a Car, LLC*, --- F. 4th ---, 2024 WL 3823210, at *1 (11th Cir. Aug. 15, 2024), the court considered whether certain terms and conditions were incorporated into the plaintiffs' rental car agreement. Because one of the plaintiffs' contracts was entered into in Colorado, the court applied Colorado law to that plaintiff's claim. *See id.* at *10–12. The court found that the rental agreement comprised two documents. *Id.* at *1. The first document was the Face Page, which set forth the terms specific to a customer's rental, such as a description of the vehicle being rented. *Id.* The second part of the rental agreement was the terms and conditions of the rental agreement, which contained the commercial, legal, and financial terms that were generally applicable to all car rentals. *Id.* These terms and conditions typically appeared in an eight-page preprinted booklet called the "Rental Jacket." *Id.* Whereas customers signed the Face Page, they did not sign the terms and conditions. *Id.* at *2. However, the Face Page stated that, "[b]y signing below, you agree to the Terms and Conditions printed on the rental jacket." *Id.* The standard practice of the defendant was to have an agent confirm information regarding the price of the rental and the customer's credit card information, and then print a paper copy of the Face Page. *Id.* The agent would then place the Face Page and the Rental Jacket containing the terms and conditions on the counter for customers to review. *Id.* After the customer signed the agreement, the agent would hand the customer the keys to the rental car. *Id.*

The court noted that "it is not clear from the record that it is necessarily true that [plaintiff] did not read the Face Page.  In her deposition, [plaintiff] only said that she did not physically touch the printed Face Page until after she signed, but could not specifically remember one way or another whether she saw the Face Page prior to signing."  *Id*. at *12 (emphasis omitted).  The court noted that, "even if [plaintiff] did not see the Face Page itself before she signed, under Colorado law she was on 'inquiry notice' as to the Face Page's terms, including those incorporating the T&C."  *Id*. (citing *Macasero*, 533 P.3d at 982).  The court found the circumstances of the case distinguishable from those in *State ex rel. U-Haul Co. of West Virginia v. Zakaib*, 752 S.E.2d 586 (W.Va. 2013), which the Colorado Supreme Court relied on in *French*, 509 P.3d at 449–50.  *Calderon*, 2024 WL 3823210, at *11.  *Calderon* explained that what was "'most troubling' to the *Zakaib* court, [was that] customers had no way of accessing the addendum prior to signing because it was U-Haul's policy 'to provide customers a copy of the Addendum *only after* the Rental Agreement had been executed.'" *Id*. at *11 (citing *Zakaib*, 752 S.E.2d at 591, 598).  The court distinguished *Zakaib* on the grounds that "the T&C in this case were specifically named, clearly distinguished in the Face Page from the Face Page itself, and the fact that the T&C were found in the Rental Jacket was apparent from both the text of the Face Page and cover of the Rental Jacket itself."  *Id*.  More importantly, the terms and conditions "were also available online and [defendant's] policy was to have copies available for customer review.  And, far from U-Haul's policy of never showing the customer the addendum, [plaintiff] was expressly required to acknowledge that she had the opportunity to review the T&C before signing."  *Id*.  As such, *Calderon* found that the plaintiff had the opportunity to review the terms

and conditions before signing the agreement, was on inquiry notice of these terms, and was therefore bound by the terms and conditions.  *Id.* at *12.

Here, the Court has no facts regarding the parties' course of dealing beyond the fact that plaintiffs purchased their policies online.  Moreover, the Court has no facts regarding the accessibility of the arbitration agreement at the time plaintiffs purchased their policies.  However, plaintiffs have submitted declarations indicating that, "[w]hen purchasing my insurance, I saw nothing that made me aware of the existence of an arbitration provision."  *See*, *e.g.*, Docket No. 18-2 at 1, ¶ 8.

While it is true that a party who strategically or unwisely declines to review the terms of a contract before signing it is deemed to have constructive knowledge of the contract's terms, *Loden v. Drake*, 881 P.2d 467, 469 (Colo. App. 1994) ("one generally cannot avoid contractual obligations by claiming that he or she did not read the agreement"); *Spaur v. Allstate Ins. Co.*, 942 P.2d 1261, 1265–66 (Colo. App. 1996) (insurance policyholders have a duty to read their policy), constructive knowledge is inapplicable in circumstances where the party has no access to the terms of the agreement before agreeing to it.  *Macasero*, 533 P.3d at 991 (citing *In re HomeAdvisor*, 2019 WL 4463890, at *6); *Calderon*, 2024 WL 3823210, at *11 (citing *Zakaib*, 752 S.E.2d at 591, 598); *French* 509 P.3d at 450 ("She assuredly could not assent to terms about which she had no knowledge and which were never disclosed to her.").  Here, neither party has submitted evidence regarding whether plaintiffs had access to a copy of their policies before purchasing them.  Rather, the evidence shows that ABIC sent a confirmation email or letter to plaintiffs that included a copy of the policy only after they had purchased their policies.  Docket No. 27-1 at 2, ¶¶ 3–5.  ABIC has failed to show

that plaintiffs had actual or constructive notice of the arbitration provision in their policies before purchasing them.[9]  Because ABIC bears the burden of demonstrating the existence of an enforceable arbitration agreement, because an enforceable agreement requires mutual assent to all material terms at the time the contract was entered into, and because ABIC has failed to show that plaintiffs had actual or constructive knowledge of the arbitration provision at the time of purchase, ABIC's argument regarding constructive knowledge is insufficient to show that plaintiffs should be compelled to arbitrate their claims.

ABIC emphasizes that plaintiffs were sent copies of their policies, including the arbitration provision, after the policies were purchased.  Docket No. 27 at 3 ("After Plaintiffs purchased their insurance policies, all Plaintiffs were sent a confirmation email or letter, which included their entire renter's insurance policy, including the arbitration provision."); *id.* at 5 ("The Arbitration Provisions were included with Plaintiffs' Policies as endorsements.  The Policies and Arbitration Provisions were sent to Plaintiffs.  Therefore, the Arbitration Provisions are valid and enforceable agreements." (citations omitted)); *id.* at 6 ("Plaintiffs were sent their full Policy, including the Arbitration Provision, to the email address or mail address provided.  Plaintiffs do not dispute that they are bound by the terms and conditions of the Policies because they are suing under the terms and conditions of their Policies.  Therefore, Plaintiffs have assented to

---

[9] The Court notes that Plaintiffs' declarations that they saw nothing that made them aware of the arbitration provision, without denying that they had access to the terms of their renter's insurance policies before purchasing them, is insufficient to show a dispute of material fact as to whether plaintiffs had constructive knowledge of the arbitration provision.  However, ABIC bears the initial burden of demonstrating an enforceable arbitration provision.

the Arbitration Provisions." (citations omitted)); Docket No. 27-1 at 2, ¶ 5 ("ABIC

attaches a PDF copy of the policy, including all declarations and endorsements, to the

confirmation email.").  However, ABIC does not explain how the fact that plaintiffs were

sent copies of their policies after purchase is relevant to whether they agreed to the

arbitration clause at the time they were purchased.  Nor does ABIC provide support for

the proposition that a party is bound by terms that it had access to only after the

contract was formed.  The caselaw supports the opposite proposition.  *See Richan*,

2022 WL 3716524, at *5; *French* 509 P.3d at 450; *In re HomeAdvisor*, 2019 WL

4463890, at *6; *Zakaib*, 752 S.E.2d at 591, 598.

In addition, ABIC argues that some plaintiffs were sent renewal notices sixty days

before their policies automatically renewed that contained copies of their policies.

Docket No. 27 at 3 ("About 60 days prior to a Plaintiff's Policy terminating, ABIC sent

Plaintiffs a renewal notice via email or mail to the email address or mailing address

Plaintiffs provided.  For nearly all Plaintiffs that were sent a renewal notice, their Policy,

including the Arbitration Provision, was included." (citation omitted)); Docket No. 28 at 4

("For several Plaintiffs[ ], ABIC sent them their Policy, including the Arbitration Provision,

with a renewal notice.").  ABIC makes no argument as to how plaintiffs' receipt of the

renewal notice and a copy of their policy demonstrates the existence of an enforceable

arbitration agreement.  Moreover, even if the Court were to construe ABIC's assertions

of fact as making the legal argument that, although plaintiffs might not have had actual

or constructive knowledge at the time they purchased their policies, the renewal notice

put plaintiffs on inquiry notice of the arbitration clause and are therefore charged with

constructive knowledge of it, the Court lacks sufficient facts regarding either what the

renewal notices contained or how the policies were attached for the Court to evaluate such an argument.

Finally, ABIC argues that an arbitrator, rather than the Court, should determine whether an arbitration clause exists.  Docket No. 28 at 7–8.  ABIC claims that the arbitration provision states that "[a]ny and all claims, disputes, or controversies of any nature whatsoever (whether in contract, tort or otherwise) including statutory, common law, [and] fraud . . . arising out of, relating to, or in connection with . . . the validity, scope, or enforceability of [the Arbitration Provision] or the entire Policy or Certificate ("Claim"), shall be resolved by binding arbitration before a single arbitrator."  *Id.*; Docket No. 27-2 at 14.  As a result, ABIC believes that an arbitrator, not the Court, should determine whether plaintiffs agreed to the arbitration provision given that plaintiffs agreed to arbitrate not only their claims, but also issues regarding the enforceability of the arbitration provision.  Docket No. 27 at 7 (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)).

Parties can agree to arbitrate "gateway" issues regarding the enforceability of arbitration provisions.  *See Rent-A-Center*, 561 U.S. at 69, 72–74 (challenging the enforceability of an arbitration provision as unconscionable).  "However, whether a party agreed to arbitration is a contract issue, meaning arbitration clauses are only valid if the parties intended to arbitrate.  No party can be compelled to submit a dispute to arbitration without having previously agreed to so submit."  *Harrison*, 59 F.4th at 1097 (citing *Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016)).  Accordingly, it is for the Court to determine in the first instance whether the parties agreed to the arbitration

clause.  *Id.* (citing *Mitsubishi Motors Corp.*, 473 U.S. at 626).  After such a determination, an arbitrator may then properly determine other issues of arbitrability.

Accordingly, the Court finds that (1) the Court is the proper decision-maker as to whether the arbitration provision is enforceable and (2) ABIC has failed to show that the arbitration provision contained in plaintiffs' policies is enforceable.  As such, the Court will deny ABIC's motion to compel arbitration.

### B.  Motion for Trial

Under § 4 of the FAA, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  *BOSC*, 853 F.3d at 1177 (quoting 9 U.S.C. § 4).  When "a quick look at the case" reveals that "no material disputes of fact exist," a district court may "decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration."  *Id.* (quoting *Howard*, 748 F.3d at 978).  But if "material disputes of fact do exist," the FAA "calls for a summary trial – not death by discovery."  *Id.* (quoting *Howard*, 748 F.3d at 978) (emphasis omitted); *Ragab*, 841 F.3d at 1139 ("When there is a genuine dispute of material facts, district courts must 'proceed summarily to the trial' to resolve the factual disputes.") (citation omitted).  "The right to a jury trial under Section 4 of the FAA, however, is not automatic."  *Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 564 (4th Cir. 2015).  "Rather, the party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists – and must also show sufficient facts in support."  *Id.* (citing *Oppenheimer & Co.,*

*Inc. v. Neidhardt,* 56 F.3d 352, 358 (2d Cir.1995); *Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir.1987)).  As such, to be entitled to a summary jury trial, the party seeking a jury trial must show that a jury is necessary to resolve a dispute of material fact.  *See Ragab*, 841 F.3d at 1139 ("[T]here are no material factual disputes in this case that we can see: the parties agreed that they entered into six agreements, and do not dispute what the arbitration provisions say.  What remained was an application of law: did the provisions conflict to such an extent that the parties could not have had a meeting of the minds?  A summary trial on this issue was unnecessary.") (internal citation omitted).

The motion for a jury trial states:

Plaintiffs argue in their Response to Defendant's Motion to Compel (Doc. 13) that Defendant has failed to meet its burden to establish that an enforceable agreement existed, and on that basis, Defendant's Motion should be denied.  If the Court were to deny Defendant's Motion to Compel Arbitration, Plaintiffs would view this instant Motion as moot.  However, in the event the Court finds a genuine dispute of material facts as to the formation of the arbitration agreement, Plaintiffs hereby request a jury trial on the limited issue of the existence of an arbitration agreement.

Docket No. 19 at 4.

The Court has found that ABIC's motion to compel arbitration should be denied.  Because plaintiffs maintain that, "[i]f the Court were to deny Defendant's Motion to Compel Arbitration, . . . this instant Motion [i]s moot," *id.*, the Court will deny plaintiffs' motion.

However, plaintiffs' concession regarding the mootness of their motion appears to be predicated on the Court's finding that the undisputed facts show that no enforceable arbitration provision exists.  The Court has not made such a finding.  Rather the Court has found that ABIC has failed to meet its burden of showing an enforceable

arbitration provision because of the absence of facts provided by either party as to how the parties entered into the agreement.  As such, despite plaintiffs' contention that the issue is moot, the Court will consider whether plaintiffs have shown that they are entitled to a summary jury trial regarding the arbitration provisions.

The only evidence that plaintiffs provide regarding how they purchased their policies are declarations which state that they do not remember seeing anything that put them on notice of the arbitration provision before purchasing their policies.  *See*, *e.g.*, Docket 18-2 at 1, ¶ 8.  Without providing details as to what information was provided to plaintiffs or how they purchased their policies, plaintiffs' declarations are insufficient to show that they are entitled to a summary trial under § 4 of the FAA.  *See Parisi v. Oklahoma Windows & Doors, LLC*, 704 F. Supp. 3d 1269, 1279 (W.D. Okla. 2023) (finding defendant's "conclusory and self-serving affidavit" was not sufficient evidence to show a "summary trial of factual matters is necessary").  It may be that the facts available to both parties demonstrate that there are no issues of material fact for a jury to resolve and that "[a] summary trial on this issue [i]s unnecessary."  *Ragab*, 841 F.3d at 1139.  The Court cannot make this conclusion on the record presented by the parties. For this additional reason, the Court will deny without prejudice plaintiffs' motion for a summary jury trial.  *Chorley Enterprises*, 807 F.3d at 564.

## IV.  CONCLUSION

Therefore, it is

**ORDERED** that Defendant American Bankers Insurance Company of Florida's Motion to Compel Arbitration and to Stay Proceedings [Docket No. 13] is **DENIED**.  It is further

**ORDERED** that Plaintiffs' Opposed Motion for Jury Trial [Docket No. 19] is

**DENIED without prejudice**.

DATED September 24, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge